The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, and KYKO GLOBAL GMBH, a Bahamian corporation, | Case No. 2:13-CV-1034 MJP |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISQUALIFY** |
| v. | |
| PRITHVI INFORMATION SOLUTIONS, LTD., a Pennsylvania corporation, PRITHVI CATALYTIC, INC., a Delaware corporation, PRITHVI  SOLUTIONS, INC., a Delaware corporation, PRITHVI INFORMATION SOLUTIONS INTERNATIONAL, LLC, a Pennsylvania limited liability company, INALYTIX, INC., a Nevada corporation, INTERNATIONAL BUSINESS SOLUTIONS, INC., a North Carolina, corporation, AVANI INVESTMENTS, INC., a Delaware corporation, ANANYA CAPITAL INC., a Delaware corporation, MADHAVI VUPPALAPATI AND ANANDHAN JAGARAMAN, husband and wife and the marital community composed thereof, GURU PANDYAR AND JANE DOE PANDYAR, husband and wife and the marital community composed thereof, and SRINIVAS SISTA AND JOHN DOE SISTA, husband and wife and the marital community composed thereof, DCGS, INC., a Pennsylvania company, EPP, INC., a Washington corporation, FINANCIAL OXYGEN, INC., a Washington corporation, HUAWEI LATIN AMERICAN SOLUTIONS, | **NOTE ON MOTION CALENDAR:** JUNE 6, 2014<br><br>**ORAL ARGUMENT REQUESTED** |

**PAGE 1 –  PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISQUALIFY Case No. 2:13-CV-1034-MJP**

SLINDE NELSON STANFORD
601 Union Street, Suite 4400
Seattle, WA 98101
p. 206-237-0020; f. 503.417.4250

1  INC., a Florida corporation, L3C, INC., a
   Washington corporation.
2                            Defendants.

## I.    REQUEST FOR RELIEF

Defendants' Motion to Disqualify Counsel in the above-captioned case is the latest effort by Defendants to derail *both* the upcoming trial date of July 7, 2014, as well as Plaintiffs' ongoing and legitimate efforts by law to pursue any and all funds or assets available to satisfy the Judgment already entered in this case, now in excess of $18 million. (Dkt. No. 116).[1]  This Court should deny the present motion to disqualify as a groundless attempt to continue to avoid Defendants' financial responsibilities arising out of the fraudulent scheme that is squarely at issue in this litigation.  Plaintiffs Kyko Global, Inc. and Kyko Global GMBH (hereafter "Kyko" or "Plaintiffs") have timely brought the issue of communications with Defendants' counsel and their lawyers to the Court -- less than three business days from learning of the issue.  Plaintiffs have limited the flow of information from the computer to Plaintiffs' attorneys until this Court has the chance to rule on the issue of admissibility and waiver.

Finally, the Court should award Plaintiffs their reasonable attorneys' fees in responding to yet another ill-conceived and dilatory motion in these proceedings.[2]

## II.    EVIDENCE RELIED UPON

Plaintiffs rely on the declarations of Keith A. Pitt (Dkt. No. 183), Christina Haring-Larson (Dkt. No. 185), James Yand (Dkt. No. 184), Tom Warren (Dkt. No. 187), Ajit Guttikonda (Dkt. No. 186), and Kiran Kulkarni, the exhibits attached thereto, and the record and file herein.

---

[1] This misplaced Motion to Disqualify is in direct response to Plaintiffs' pending motion regarding the admissibility of certain materials/documents located on the personal computer of defendant Madhavi Vuppalapati (the "Madhavi Computer"), which computer was recently purchased by Plaintiffs at public auction on April 24, 2014.  (Dkt No. 163).  Accordingly, these two matters should be addressed and resolved by the Court at the same time.

[2] *See* LCR 11(c) ("An attorney . . . . who presents to the court unnecessary motions or unwarranted opposition to motions, . . . .  or who otherwise so multiplies or obstructs the proceedings in a case may . . . . be required by the court to satisfy personally such excess costs and may be subject to such other sanctions as the court may deem appropriate.").

**PAGE 2 –    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
              TO DISQUALIFY
              Case No. 2:13-CV-1034-MJP**

### III.   LEGAL ANALYSIS

Defendants' Motion to Disqualify is, at its base, predicated on: (1) a flawed recitation of the factual and legal basis by which Plaintiffs *lawfully* took possession of the subject computer, under the applicable procedures set forth in RCW 6.21 *et seq.* for the sale of a judgment debtor's assets, (2) a misplaced reliance on the outdated case of *Richards v. Jain*, 168 F.Supp.2d 1195, 1201 (W.D.Wash.2001), which was based on a now-withdrawn ABA ethics opinion and does not address the *current* provisions of RPC 4.4(b) or inform the obligations of counsel under the facts and circumstances presented here, and (3) a flawed invocation of a 2012 Washington ethics opinion, which examined the interplay between RPC 4.4(a) and 8.4(d), and the *narrow* inquiry regarding the intentional use of "special forensic software designed to circumvent metadata removal tools" in order to capture otherwise "privileged" information embedded within a document exchanged among counsel.

Defendants efforts to misconstrue and extort the factual record before the Court is a desperate attempt to avoid what cannot be denied – Defendants' waived any rights or claim of privilege to the contents of the computer by failing to object when they first learned of the sheriff's sale of the computer back in February 2014.  After receiving notice of the sale and an opportunity to object, Defendants allowed the sheriff's sale to go forward on April 24, 2014.

### A.   Standard of Review.

Motions to disqualify counsel – often bare tactics to gain an advantage in litigation – are viewed with skepticism and subject to exacting scrutiny. *FMC Technologies, Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157 (W.D. Wash. 2006) ("The Court acknowledges at the outset that disqualification is a drastic measure and that it must consider the danger of a motion to disqualify opposing counsel as a litigation tactic."); *Silva v. Gregoire,* 2007 WL 1046888 (W.D. Wash. 2007) ("Because of the potential for abuse, ***disqualification motions should be subjected to 'particularly strict judicial scrutiny*.'") (citations omitted) (emphasis added).[3]

---

[3] *See also Richards v. Jain*, 168 F.Supp.2d 1195, 1200 (W.D.Wash. 2001) ("In general,

**SLINDE NELSON STANFORD**
601 Union Street, Suite 4400
Seattle, WA 98101
p. 206-237-0020; f. 503.417.4250

Furthermore, "[f]or a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Cunningham v. County of Los Angeles,* 879 F.2d 481, 490 (9th Cir.1988) (internal quotations omitted), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990).  A cursory review of the undisputed facts and applicable law reveals that Defendants' Motion to Disqualify is entirely without merit.  As detailed below, there is absolutely no factual or legal support for the proposition that Plaintiffs' counsel violated *any* ethical rules or other similar standards of conduct in the case at bar.

### B. Plaintiffs Lawfully Obtained the Computer As Part of the Post-Judgment Collection Process.

The undisputed facts surrounding Plaintiffs' *lawful* acquisition of the Madhavi Computer, pursuant to RCW 6.21 *et seq.*, is set forth in Plaintiffs' briefing submitted in connection with their pending Motion to Determine Admissibility on this same subject matter, (Dkt Nos. 163 & 182), which are incorporated by reference.

Plaintiffs' counsel have sought the Court's ruling on the Computer, but the Madhavi Computer itself has never been in the hands of Plaintiffs' counsel.  As detailed in the declaration of Kiran Kulkarni, "all decisions regarding the transport, chain of custody, and review of the Madhavi Computer were made by Plaintiffs alone." (Kulkarni Dec., ¶ 4).  Further, as any forensic analysis of the computer that has occurred to date, has been conducted by Net-Patrol International Inc. ("NPI"), a third party, independent private investigation company, also an entity engaged by Plaintiffs alone.  (Kulkarni Dec., ¶ 3).  Moreover, although not required to do so under the Washington RPC's, as a matter of professional practice, the undersigned have avoided reviewing materials that are arguably subject to the attorney-client privilege, pending resolution of these motions.   (Haring-Larson Dec., ¶ 3; Pitt Dec., ¶ 3).

Second, as this Court is aware, this litigation involves a massive fraud whereby Madhavi

---

disqualification is viewed as a 'drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; *therefore it should be imposed only when absolutely necessary*.'") (emphasis supplied; internal citations omitted).

SLINDE NELSON STANFORD
601 Union Street, Suite 4400
Seattle, WA 98101
p. 206-237-0020; f. 503.417.4250

1  Vuppalapati, along with her co-defendants, took in excess of $18,000,000, from Plaintiffs, which

2  sum has already been reduced to judgment against certain parties based on Confessions of

3  Judgment.  Defendant Madhavi, who admits she and her related entities failed to pay Kyko in

4  excess of $18 million, and who, in connection with an unsatisfied judgment, had her home

5  computer sold, *at public auction*, should receive scant consideration from this Court.  It belies all

6  common sense and credulity for Defendants to claim unfair *surprise* surrounding Plaintiffs

7  election to purchase one or more of Ms. Vuppalapti's personal items at the public auction,

8  especially after notice and an opportunity to object were provided months ago.[4]

9        Third, Defendants' continuing refrain and assertion that Plaintiffs are somehow

10  improperly seeking to conduct "discovery" outside the terms of the Scheduling Order is a clear

11  attempt to misdirect the Court's attention from what is truly occurring as part of the post-

12  judgment collection process in this litigation.[5]  Simply stated, when accessing the available legal

13  processes and pursuing the trail of evidence related to potential assets arising out of a massive

14  fraud, and where the responsible parties continue to seek to shelter/divert those same assets from

15  execution, it should come as no surprise that facts and evidence pertaining to the underlying

16

17

18        [4] Nor should the Court give any credibility to the declaration of Ms. Vuppalapati submitted in support

19  of Defendants' Motion to Disqualify in this matter.  For example, in that declaration Ms. Vuppalapti
    asserts she was "astounded" to see a non-privileged document, which she presumes came from her home
    computer, was submitted in connection with her Rule 2004 Examination that occurred on May 15, 2014

20  as part of the separate bankruptcy proceeding in Pennsylvania.  (Madhavi Dec., ¶¶ 5-6).  During that May
    15, 2014 examination of Ms. Vuppalapati she invoked the Fifth Amendment to the United States

21  Constitution numerous times.  (Kulkarni Dec., ¶¶ 15, 21).  As such, both Ms. Vuppalapti's veracity, as
    well as the accuracy of her declaration, on any of these subjects, should be viewed with extreme

22  skepticism.

23        [5] Although the Court denied Plaintiffs' Motion to Modify the Scheduling Order, (Dkt. No. 150),

24  there is, respectfully, no disputing that *Defendants* themselves had previously "agreed" to seek such a
    modification (and, indeed, also *desired* to extend the trial date to December 2014, a month longer than

25  initially proposed by Plaintiffs), including the discovery schedule, only to renege on that agreement at the
    eleventh hour.  (Dkt. No. 135).  Similarly, this present motion is reflective of these altogether transparent

26  tactics to avoid a trial, on its merits, and based on a full record.

**PAGE 5 –    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
            TO DISQUALIFY
            Case No. 2:13-CV-1034-MJP**

fraud will naturally emerge.[6]

Notwithstanding the above, Defendants' unsupported allegations of impropriety (*i.e.,* the "hacking" into the computer) and other mischaracterizations, and which Defendants seek to attribute to Plaintiffs' counsel, are not supported by the record, common sense, or the law.

**C.  Plaintiffs' Attorneys Have Not Violated the Washington Rules of Professional Conduct or Other Provisions of Law.**

1.  Defendants' Reliance on *Richards v. Jain* is Misplaced and Inapplicable to the Matters Now Under Review.

Defendants' reliance on *Richards v. Jain*, 168 F.Supp.2d 1195 (W.D. Wash. 2001) is misplaced. First, the *Richards* court confronted a situation where the vice president of a company – with access to the company's entire email and database – provided a copy of over 100,000 emails to his attorneys *prior* to initiating litigation against the company.  Further, the vice president was also subject to a non-disclosure agreement. Upon receiving the database, over an 18-month period of time, a paralegal at the law firm and at least one attorney reviewed thousands of emails, some of which included communications between the company and its attorneys.

In disqualifying the law firm from the case, the Court made the following observations:

> An attorney who receives privileged documents has an ethical duty upon notice of the privileged nature of the documents to cease review of the documents, notify the privilege holder, and return the documents. ***See ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94–382 (1994)***. A failure by an attorney to abide by these rules is grounds for disqualification.

*Id*. at 1200-1201 (emphasis supplied)

> This is not a case of inadvertent disclosure during the normal discovery process that could potentially constitute a waiver of privilege. Defendants did not provide any of the contested documents to Plaintiffs.

*Id*. at 1208.

---

[6] "It is not only by dint of lying to others, but also of lying to ourselves, that we cease to notice that we are lying."— Marcel Proust, <u>Sodom and Gomorrah</u>.  Indeed, it is the lament of those who would defraud, unable to maintain the façade or forward the lines of deceit in perpetuity, that the scheme and its constituents shall eventually become undone.

PAGE 6 –   **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISQUALIFY**
**Case No. 2:13-CV-1034-MJP**

1    Three matters bear noting.  First, the facts/circumstances in the case bar – the *lawful*

2    purchasing of a computer at public auction – are entirely distinct from a *vice president* who

3    obtains the company's *entire* electronic database that includes privileged materials, and

4    thereafter provides it to his attorneys for use in future litigation *against* that company.  Second,

5    the court explicitly notes the matter did not involve a potential "waiver" of the privilege that, of

6    course, is squarely at issue in this case.  Third, and most importantly, the *Richards* court

7    analyzed the issue under a *former* version of the ethical rules, citing the 1994 opinion of the

8    ABA, Formal Op. 94–382 (1994).

9    The current version of RPC 4.4(b) provides, in relevant part:

10          (a) In representing a client, a lawyer shall not use means that have no substantial
11          purpose other than to embarrass, delay, or burden a third person, or use methods
            of obtaining evidence that violate the legal rights of such a person.

12          (b) *A lawyer who receives a document* relating to the representation of the
13          lawyer's client and knows or reasonably should know that the document was
            inadvertently sent *shall promptly notify the sender*.

14   (emphasis supplied)

15   The Comments to the above rules state:

16
17          Paragraph (b) recognizes that lawyers sometimes receive documents that were
            mistakenly sent or produced by opposing parties or their lawyers. If a lawyer
18          knows or reasonably should know that such a document was sent inadvertently,
            then this Rule requires the lawyer to promptly notify the sender in order to permit
19          that person to take protective measures. ***Whether the lawyer is required to take
            additional steps, such as returning the original document, is a matter of law***
20          ***beyond the scope of these Rules, as is the question of whether the privileged***
            ***status of a document has been waived***.
21
22          ***Some lawyers may choose to return a document unread, for example, when the***
            ***lawyer learns before receiving the document that it was inadvertently sent to the***
23          ***wrong address. Where a lawyer is not required by applicable law to do so, the***
            ***<u>decision to voluntarily return such a document is a matter of professional</u>***
24          ***<u>judgment ordinarily reserved to the lawyer.</u>***

25   (emphasis supplied).   Indeed, the 2012 Washington Advisory Opinion 2216 relied on by

26   Defendants (interpreting RPC 4.4(b)) unequivocally states: "Under the ethical rules, Lawyer B *is*

**PAGE 7 –   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
           TO DISQUALIFY
           Case No. 2:13-CV-1034-MJP**

SLINDE NELSON STANFORD
601 Union Street, Suite 4400
Seattle, WA 98101
p. 206-237-0020; f. 503.417.4250

1   **not required to refrain from reading the document, nor is Lawyer B required to return the**

2   **document to Lawyer** \*\*\* If Lawyer B is not under such a separate legal duty, **the "decision to**

3   **voluntarily return such a document is a matter of professional judgment ordinarily reserved to**

4   **the lawyer[,]" in consultation with the client.**") (emphasis supplied)

5       Here, in filing Plaintiffs' underlying motion, *none* of Plaintiffs' attorneys in this case

6   *reviewed* privileged documents, and the computer itself has at all times has remained in the

7   custody of NPI in New York State or Kyko itself.  RPC 4.4(b) was not implicated under the facts

8   presented until documents were produced from the computer to Plaintiffs' counsel.[7]

9   Nevertheless, Plaintiffs' counsel have avoided reviewing further documents from the computer

10   until the Court has an opportunity to rule on the Motion to determine admissibility and privilege

11   issues.  Within three judicial days of learning of this matter, Plaintiffs placed the inquiry before

12   the Court for review.

13       Moreover, the present version of RPC 4.4 does not, as contended by opposing counsel,

14   require the "return" of the computer, or any of the documents it may contain, whether privileged

15   or otherwise.  On this point, it should be noted that ABA Formal Op. 94–382 (1994), upon which

16   the *Richard's* court relied, has been withdrawn in favor of the current version of the rules.  In *Mt.*

17   *Hawley Ins. Co. v. Felman Production, Inc.,* 271 F.R.D. 125, 130-131 (S.D.W.Va.,2010), United

18   States District Court for West Virginia explained:

19         *In Richards v. Jain*, 168 F.Supp.2d 1195, 1201 (W.D.Wash.2001), the court
20         discussed the ethical duties of attorneys and paralegals who receive inadvertently
            produced privileged documents and cited to the Committee's Formal Opinion 94–
21         382 (1994).

22         Formal Opinion 92–368 was withdrawn on October 1, 2005 in the Committee's
23         Formal Opinion 05–437, "Inadvertent Disclosure of Confidential Materials." In

---

24       [7] *See* ABA Formal Opinion 06-440 ("It further is our opinion that *if the providing of the materials is*
25   *not the result of the sender's inadvertence, Rule 4.4(b) does not apply* to the factual situation addressed
    in Formal Opinion 94-382. *A lawyer receiving materials under such circumstances is therefore not*
26   *required to notify another party or that party's lawyer of receipt as a matter of compliance with the*
    *Model Rules*.") (emphasis supplied)

**PAGE 8 –    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
          TO DISQUALIFY
          Case No. 2:13-CV-1034-MJP**

Opinion 05–437, the Committee noted that it must look to Model Rule of Professional Conduct 4.4(b), which reads: "A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender." Opinion 05–437 provides as follows:

> A lawyer who receives a document from opposing parties or their lawyers and knows or reasonably should know that the document was inadvertently sent should promptly notify the sender in order to permit the sender to take protective measures.

> The Committee noted that Rule 4.4(b) ***does not require the receiving lawyer either to refrain from examining the materials or to abide by the instructions of the sending lawyer*.**"

Formal Opinion 94–382 was withdrawn on May 13, 2006 in the Committee's Formal Opinion 06–440, "Unsolicited Receipt of Privileged or Confidential Materials." Opinion 06–440 provides in pertinent part as follows:

> ***The Rule does not require refraining from reviewing the materials or abiding by instructions of the sender.***

(emphasis supplied)

What is clear from the above is that Defendants' Motion to Disqualify is grounded on a superseded and outdated application of the Washington rules of ethics and ABA opinions. Specifically, the *present* version of RPC 4.4, as well as the *applicable* ABA formal opinions, addressing *both* an "inadvertent" and "unsolicited" receipt of "privileged" materials do "***not require the receiving lawyer either to refrain from examining the materials <u>or to abide by the instructions of the sending lawyer</u>*.**" *Id.*  Having said that, as a matter of professional courtesy/practice, *none* of the undersigned attorneys, or those at Miller Nash for that matter, have sought to use the materials that Defendants are "privileged" or otherwise came from the Madhavi Computer.  Plaintiffs' counsel is waiting for direction from the Court as to how to proceed after a ruling on the Motion regarding Admissibility and Defendants' Motion to Disqualify.[8]

---

[8] Defendants' reliance on the opinion of the *Matter of Firestorm 1991*, 129 Wash.2d 130, 139-140, 916 P.2d 411 (1996) is similarly misplaced.  *Firestorm* does not reference any discussion of RPC 4.4 whatsoever.  And, the *Firestorm* case is legally and factually distinguishable because it concerned an alleged ethical violation resulting from the *ex parte* contact with the opposing party's expert, in violation of CR 26(b).

PAGE 9 –   **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISQUALIFY**
   **Case No. 2:13-CV-1034-MJP**

SLINDE NELSON STANFORD
601 Union Street, Suite 4400
Seattle, WA 98101
p. 206-237-0020; f. 503.417.4250

1    Accordingly, Plaintiffs have, without question, complied with both the letter and spirit of RPC

2    4.4 in timely bringing this matter to the attention of the Court and Defendants' counsel.

3         2.   RPC 4.4(a) is Inapplicable to Facts Presented.

4         As a fall back position, Defendants seek to construct an alternate argument out of whole

5    cloth, asserting without any factual basis whatsoever:

6              In addition to the issues of disqualification because of counsel's exposure to
7              attorney-client information, counsel's actions raise ethical concerns regarding the
               use of forensic software to obtain information that would not be readily available
8              to the public.

9    *See* Def. Mot., Pg. 7, lns. 14-16.

10        In support of this manufactured argument, Defendants rely on WSBA Advisory Opinion

11   2216 which provides, in relevant part:

12             This opinion addresses certain ethical obligations related to the transmission and
               receipt, in the course of a legal representation, of electronic documents containing
13             "metadata." Specifically, this opinion addresses: . . . . ***the ethical propriety of <u>an
               attorney using special forensic software to recover</u>*** *– from another party's*
14             *documents – metadata that is not otherwise readily accessible through standard*
               *word processing software.*
15

16             Illustrative Facts:

17                                          ****

18             3.        Same facts as #1, except that Lawyer A makes reasonable efforts to
                         "scrub" the document and thereby eliminates any readily accessible
19                       metadata before sending the document to Lawyer B.  ***Lawyer B possesses
                         special forensic software designed to circumvent metadata removal tools***
20                       ***and recover metadata Lawyer A believes has been "scrubbed" from the***
                         ***document. <u>Lawyer B wants to use this software on Lawyer A's document</u>***
21                       ***<u>to determine if it contains any metadata that may be useful in</u>***
                         ***<u>representing his own client.</u>***
22

23   In analyzing this discrete fact pattern, the Committee made the following observations:

24             ***To the extent that efforts to mine metadata yield information that***
               ***intrudes on the attorney-client relationship, such efforts would also***
25             ***violate the public policy of preserving confidentiality as the foundation***
               ***of the attorney-client relationship. See RCW 5.60.060(2)(a), Dietz v.***
26             ***Doe, 131 Wn.2d 835, 842 (1997), and Comments 2 & 3 to RPC 1.6. As***

**PAGE 10 –   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
              TO DISQUALIFY
              Case No. 2:13-CV-1034-MJP**

1

2

> ***such, it is the opinion of this committee that <u>the use of special software to recover, from electronic documents, metadata that is not readily accessible does violate the ethical rules</u>.***

3

4

5

6

7

8

The above opinion is expressly limited to the specific fact pattern presented and does not apply to the facts of this case.[9]  Here, counsel did not, as a factual matter, utilize anything remotely akin to "special forensic software designed to circumvent metadata removal tools" to capture otherwise "privileged" information "embedded within documents" exchanged among the attorneys in this litigation.  Nor is there any evidence that Plaintiffs' counsel improperly directed or controlled an analysis of the subject computer.

9

**D.      The Computer Was Not Password Protected and A Third Party Vendor, Net Patrol, Made a Copy That Was Sent Directly to Kyko.**

10

11

12

13

14

15

16

Defendants also claim in their Motion to Disqualify that the information on the computer was password protected.   As detailed in the declarations attached to Plaintiffs' motion to determine the admissibility these documents, and to the extent it is even relevant to the analysis at all, as a factual matter there were *no* passwords or other form of encryption preventing *anyone* who purchased the Madhavi Computer at public auction from viewing its contents, including the affected documents now at issue.  Declaration of Tom Warren ¶ 4(d) (Dkt. No. 186); Declaration of Ajit Guttikonda, ¶ 6 (Dkt. No. 187).

17

18

19

20

Finally, to the extent discrete documents are deemed admissible for purposes of *this* litigation, Plaintiffs have no objection to providing Defendants with a duplicate forensic clone of the hard drive of the Madhavi Computer, a computer that Plaintiffs now lawfully own.

**IV.      CONCLUSION**

21

22

23

24

The Court should deny Defendants' Motion to Disqualify and conclude that no claim of privilege exists regarding the contents of the Madhavi Computer, which was sold to Kyko at public auction.  Defendants' delay tactics seek to sidetrack resolution of this matter at trial, on its

25

26

---

[9] *See* WSBA Advisory Opinion 2216 ("The Committee's answer ***does not include or opine about any other applicable law than the*** meaning of the Rules of Professional Conduct. ***<u>Advisory Opinions are based upon facts of the inquiry as presented to the committee.</u>***"). Nor does this opinion purport to address how a "waiver" of the privilege, under the facts of *this* case, would alter the analysis.

**PAGE 11 –   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISQUALIFY**
**Case No. 2:13-CV-1034-MJP**

SLINDE NELSON STANFORD
601 Union Street, Suite 4400
Seattle, WA 98101
p. 206-237-0020; f. 503.417.4250

merits, and without the full benefit of all relevant materials before jury.   In addition, the Court should award Plaintiffs their reasonable attorneys' fees in connection with this baseless motion, which is completely unsupported by the facts and law advanced by Defendants herein.

Dated this 2nd day of June 2014.

SLINDE NELSON STANFORD


By:   /s/ Keith Pitt
      Keith Pitt, WSBA No. 40429
      Christina Haring-Larson, WSBA No. 30121
      *Of Attorneys for Plaintiffs*

**PAGE 12 –   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
              TO DISQUALIFY
              Case No. 2:13-CV-1034-MJP**

1

## CERTIFICATE OF SERVICE

2       I hereby certify that I served the foregoing **PLAINTIFFS' RESPONSE TO**

3   **DEFENDANTS' MOTION TO DISQUALIFY** on:

4   Mark D. Kimball
    Mary K. Thurston
5   MDK Law Associates
    777 108th Ave NE, Suite 2170
6   Bellevue, WA 98004-5118

7   by the following indicated method(s):

8   ☐       by **faxing** full, true, and correct copies thereof to said attorney to the fax number noted
            above, which is the last known fax number for said attorney, on the date set forth
9           below.

10  ☐       by **emailing** full, true, and correct copies thereof to said attorney to the email address
            noted above, which is the last known email address for said attorney, on the date set
11          forth below.

12  ☒       by notice of electronic filing using the CM/ECF system (LR 100.7(a)(2)).

13  ☐       by causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the
            attorney(s) last-known office address(es) listed above on the date set forth below.

14

15

16      Dated this 2nd day of June 2014.

17                                      SLINDE NELSON STANFORD

18

19                              By:    /s/ Keith Pitt
                                       Keith Pitt, WSBA No. 40429
20                                     Christina Haring-Larson, WSBA No. 30121
                                       *Of Attorneys for Plaintiffs*

21

22

23

24

25

26

**PAGE 13 – CERTIFICATE OF SERVICE**
**Case No. 2:13-CV-1034-MJP**